FILED
APR 11 2013
Clerk, U S District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>MARK ANDREW CHRISTENSEN,<br><br>Defendant/Movant. | Cause No. CR 06-085-BLG-RFC<br>(CV 12-105-BLG-RFC)<br><br>CR 07-101-BLG-RFC<br>(CV 12-106-BLG-RFC)<br><br>ORDER |

On August 20, 2012, Defendant/Movant Mark Christensen ("Christensen"), a federal prisoner proceeding pro se, filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. He was convicted in two criminal cases and alleges claims relevant to both. Christensen also filed a brief in support and, on October 19, 2012, a notice of additional evidence.

On October 29, 2012, Christensen was ordered to supplement his motion with

1

facts relating to his claim that his attorneys failed to investigate a defense of entrapment. He responded on November 14, 2012.

On November 15, 2012, the United States was ordered to file any and all plea offers made in the underlying proceedings. It complied on November 28, 2012.[1]

## I. Preliminary Screening

The motion is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) (*"Nicolaus"*) (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

---

[1] Although the United States did not file the correct Offer of Proof in No. CR 06-85-BLG, the Offer of Proof is in the Court's record. There is no need to refile documents already in the record.

2

## II. Background

Christensen appeared on a Complaint on June 6, 2006. Assistant Federal Defender Steven Babcock was appointed to represent him. A grand jury indicted Christensen on June 26, 2006, on one count of enticing a minor to engage in sexual activity, a violation of 18 U.S.C. § 2422(b), in Cause No. CR 06-85-BLG. Indictment (doc. 9) at 2.[2] Babcock evidently counseled a guilty plea, but Christensen disagreed. He moved for new counsel on August 31, 2006. Mot. (doc. 17). The motion was granted, and Solomon Neuhardt was appointed. Order (doc. 18).

Trial was set for April 30, 2007. Scheduling Order (doc. 30) at 1. When the time came, Christensen failed to appear. A bench warrant was issued, and Christensen was subsequently indicted for violation of 18 U.S.C. § 3146(a)(1) in Cause No. CR 07-101-BLG. He was arrested in the Western District of Washington in mid-July 2007. *See* Rule 40 Documents (doc. 59).

When Christensen was returned to the District of Montana, new counsel Kelly Varnes was appointed to represent him in both cases. Order (doc. 64). On October 29, 2007, Christensen moved to change his plea in both cases. He entered an open plea of guilty in both cases on November 8, 2007. The advisory guideline calculation produced an offense level of 30 and a criminal history category of V, Presentence

---

[2] References to document numbers relate to Cause No. CR 06-85-BLG.

Report ¶¶ 29-40, 42-50, for an advisory guideline range of 151-188 months. On March 27, 2008, he was sentenced to serve 186 months in Cause No. CR 06-85-BLG and 24 months, consecutive, in Cause No. CR 07-101-BLG, for a total term of 210 months, to be followed by a life term of supervised release. Minutes (docs. 70, 81); Judgment (doc. 82) at 2-3.

Christensen appealed and obtained a remand for re-sentencing. *United States v. Christensen*, 598 F.3d 1201, 1206 (9th Cir. 2010). On August 4, 2010, he was re-sentenced to serve 138 months in Cause No. CR 06-85-BLG and 24 months, consecutive, in Cause No. CR 07-101-BLG, for a total term of 162 months, to be followed by a life term of supervised release. Minutes (doc. 99); Am. Judgment (doc. 100) at 2-3. Christensen again appealed. His sentence was affirmed on June 23, 2011. *United States v. Christensen*, Nos. 10-30246 & 10-30239 (9th Cir. June 23, 2011) (unpublished mem. disp.) (doc. 110). He petitioned for a writ of certiorari, but his petition was denied on October 31, 2011. *Christensen v. United States*, __ U.S. __, 132 S. Ct. 535 (2011).

Christensen timely filed his § 2255 motion on August 20, 2012. 28 U.S.C. § 2255(f)(1).

### III. Claims and Analysis

Christensen makes several claims of ineffective assistance of counsel.

*Strickland v. Washington*, 466 U.S. 668 (1984), governs such claims. First, Christensen must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. Second, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

### A. Stipulation

Christensen claims Neuhardt violated attorney-client privilege and the Sixth Amendment by offering, in an e-mail to the prosecutor accompanied by an emoticon, to "stipulate that my client is guilty. :)" No one took Neuhardt's frivolous e-mail as an actual stipulation. Neither element of the *Strickland* test is met. This claim is denied.

### B. Defenses of Entrapment and Alibi

Christensen says all of his lawyers failed to investigate potential defenses of entrapment and alibi.

#### 1. Entrapment

"In their zeal to enforce the law . . . Government agents may not originate a

5

criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute." *Jacobson v. United States*, 503 U.S. 540, 548 (1992). Where the defendant introduces some evidence of entrapment, the prosecution must prove, beyond a reasonable doubt, either that government agents did not induce the defendant to commit the crime or that the defendant was predisposed to commit the crime before being contacted by government agents. 9th Cir. Jury Instr. (Crim.) 6.2 (2003). "'[I]nducement' consists of an 'opportunity' *plus* something else – typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." *United States v. Poehlman*, 217 F.3d 692, 701 (9th Cir. 2007) (quoting *United States v. Gendron*, 18 F.3d 955, 961 (1st Cir. 1994) (Breyer, Ch. J.) (emphasis in original); *see also Gendron*, 18 F.3d at 961-62 (citing examples). But "ready commission of the criminal act amply demonstrates the defendant's predisposition." *Jacobson*, 503 U.S. at 550.

The record of the case shows the following facts. Someone using the screen name "hornyguy59405" communicated online with a person claiming to be a sixteen-year-old girl in Billings. For more than five months, "hornyguy59405" engaged in sexually explicit talk with the girl and repeatedly suggested they should meet and

6

have sex. He sent her photos of both himself and an (anonymous) erect penis. The screen name "hornyguy59405" was traced to a female subscriber by the last name of Christensen at a mailing address in Great Falls, Montana – zip code 59405. The account was associated with the e-mail address "Mark_A_Christensen@MSN.com." Records indicated that Mark Andrew Christensen lived at the same address in Great Falls as the female subscriber on the account.

One day, "hornyguy59405" contacted the girl to tell her he was on his way to Billings and would meet her in a particular location before taking her to a motel to have sex with her. Mark Andrew Christensen showed up at the rendezvous point just after picking up KY and condoms at the local Wal-Mart. He gave a statement admitting all the foregoing facts and apologizing to the "girl" and her "mother." And he admitted the United States could prove all these facts beyond a reasonable doubt. Change of Plea Tr. (doc. 88) at 22:17-25:7; *see also* Vierthaler Aff. (doc. 1) at 3-8 ¶¶ 4-18.

In addition, on September 21, 2006, the United States filed notice of its intent to use evidence of other, similar acts by Christensen between 2003 and 2006 with persons representing themselves to be minor girls but who were actually two undercover FBI agents and a woman in Great Falls. Christensen had expressed interest in having sex with each of them. *See* Notice (doc. 21); Trial Br. (doc. 45) at

3; *United States v. Curtin*, 489 F.3d 935, 951-52 (9th Cir. 2007) (en banc).

Finally, in response to the Order of October 29, 2012, Christensen says a third person, "m_lkn_4a_3some," approached him in a chat room and said "he knew a female that was interested in older guys." Resp. (doc. 120) at 1. The girl then contacted Christensen. Christensen concludes:

> Could the government be protecting an actual minor? That'd be a noble cause, but a violation of my rights. I truly believe that the person I was chatting with in the summer of 2005 was the real [girl] and not Agent Vierthaler. And in the fall of 2005 someone did go to the police and at that point Agent Vierthaler took over [the girl's] persona on Yahoo messenger.

Resp. at 4-5. Neither Christensen's theory that the "real girl" made the first move, nor the precise date after that on which Vierthaler stepped in for her, makes the slightest difference in his criminal culpability. What he describes does not remotely suggest the government gave Christensen "opportunity *plus*" something else that created "a substantial risk that an otherwise law-abiding citizen would commit an offense." *Poehlman*, 217 F.3d at 698. Christensen was not an otherwise law-abiding citizen but "an 'unwary criminal' who 'readily availed himself of the opportunity to perpetrate the crime.'" *United States v. Young*, 613 F.3d 735, 747 (8th Cir. 2010) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)). Assuming the girl made the offer, Christensen accepted with alacrity. He talked the talk, he traveled to

8

Billings, he rented the motel room, he bought the condoms, and he put the camera in the truck in the hope of photographing the girl.

### 2. Alibi

Christensen uses the word "alibi" in his Brief and claims his attorneys should have investigated it. *See* Br. in Supp. at 6; 9th Cir. Jury Instr. (Crim.) 6.1 (2003). But Christensen was the only person who knew he should get a motel room and show up with KY and condoms at the rendezvous point in Billings. He was arrested there a little after 10:30 p.m., admitted everything, appeared before Judge Anderson the next day, and remained in custody until Judge Anderson released him on conditions three days later. How could he have been somewhere else?

### 3. Conclusion

There is no reasonable probability that Christensen could have obtained instructions on these defenses, much less that a reasonable juror might have believed one of them and declined to find him guilty. There also is no reason to think any of Christensen's lawyers acted in a professionally unreasonable manner. Neither element of the *Strickland* test is met. This claim is denied.

### C. Criminal History

Christensen's third claim, concerning criminal history, *see* Mot. § 2255 at 6; Br. in Supp. at 8-11, alleges a "gross mischaracterization of the likely outcome," *Iaea*

9

*v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986), at sentencing. Other counsel may have correctly advised him, but I assume, for present purposes, that counsel should have known Christensen's criminal history well enough to know the category would be V instead of III. The correct advisory guideline range for CR 06-85-BLG was 130-162 months, Re-Sentencing Tr. (doc. 108) at 16:25, not 97-121 months. I will also assume, for present purposes, that the disparity was "gross."

But the Ninth Circuit requires that such a showing be "combined with . . . erroneous advice on the possible effects of going to trial." *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) (quoting *Brady v. United States*, 397 U.S. 742, 748 & n.6 (1970)). A defendant must show both gross mischaracterization and something that makes trial a reasonable option or a guilty plea an unreasonable option. While the choice between pleading guilty and going to trial is the defendant's, both *Strickland*, 466 U.S. at 694-95, and *Hill v. Lockhart*, 474 U.S. 52, 60 (1985), explain that the prejudice inquiry is objective. Thus, such factors as the strength of the prosecution's case or the availability of a defense are important.

At the time of his arrest, Christensen admitted everything. The United States had chat logs and photographs that Christensen exchanged with the girl. *See also supra* at 6-8. Christensen was given an extra opportunity in these proceedings to show potential merit in an entrapment defense, and he failed. (And, of course, when

10

trial was made available to him, Christensen was so sure he did *not* want to go to trial that he fled the jurisdiction.) There is no reasonable probability that a reasonable person in Christensen's position would have chosen to go to trial if counsel had correctly projected the likely sentencing range.

### D. Plea Offers

Christensen claims an open plea was "foolish." Mot. § 2255 at 6; Br. in Supp. at 11-13. After the United States was ordered to file all the plea offers it made, Christensen responded that he "has never seen, discussed, or been advised of" the proposed plea agreement filed by the United States on November 28, 2012. Pet'r Resp. to Gov't Compliance (doc. 124) at 1 ¶ 1. He also states that counsel told him, "The Government won't deal." *Id.*

Failing to relay a plea offer to a client is deficient performance, *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399, 1408 (2012), but counsel correctly characterized the offer here by saying, "The Government won't deal." The proposed agreement gave Christensen no advantage that he lost by entering an open guilty plea instead.

Whether Christensen has shown a violation of the Freedom of Information Act, Pet'r Resp. at 1 ¶ 2, has no bearing on the motions in these cases.

### E. Re-Sentencing

Christensen asserts that Varnes should have entered into the record 300 pages

11

of medical information at resentencing, but the probation officer contacted the BOP to inquire about Christensen's medical condition. There is no reasonable probability that counsel could or should have done anything different to supplement the medical information at re-sentencing. The letters written to Christensen in response to his complaints to Members of Congress do not show that "at least three Congressional investigations were started on the issue of the petitioner's health concerns and his health care;" at any rate, they certainly produced no results prior to re-sentencing. Further, Christensen states that he was notified "this week," that is, in the neighborhood of October 8-15, 2012, that he has a large mass in his right lung. Notice (doc. 118) at 1-2. That is unfortunate. But it has no bearing on the validity of Christensen's convictions or sentences.

Christensen also claims he should have had more time to prepare objections, but he adds nothing to the objections he personally wrote and I considered in August 2010. Objections (doc. 98) at 2; Re-Sentencing Tr. (doc. 108) at 8:18-10:14. His complaints about Varnes's statement that he was "Christensened out" are meritless. Nothing in Varnes's performance at the re-sentencing hearing – after he obtained an appellate victory in the form of a four-year reduction in Christensen's sentence – suggests he was performing at a less than professional standard. Re-Sentencing Tr. at 3:4-28:18. A defendant is not entitled to a meaningful relationship with his lawyer.

Nor is a defendant entitled to excoriate his lawyer at will and yet insist that his lawyer not grow weary of him. *Morris v. Slappy*, 461 U.S. 1, 5-9, 11-12 (1983). This claim is denied.

### F. *State v. Goetz*

Christensen claims that Varnes was ineffective because he failed to consider the implications of the Montana Supreme Court's ruling in *State v. Goetz*, 191 P.3d 489 (Mont. 2008) (holding that Montana Constitution requires warrant to support electronic monitoring of consenting informant's conversations). While there is no reason to doubt that Varnes failed to consider those implications, *Goetz* had no implications for Christensen's case. Goetz was prosecuted in state court under state law for committing a state offense. Christensen was prosecuted in federal court under federal law for committing a federal offense. The Fourth Amendment, *United States v. White*, 401 U.S. 745, 751-54 (1981), and *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1372-74 (9th Cir. 1987), are the controlling authorities in federal court. None of them was violated. Neither element of the *Strickland* test is met. This claim is denied.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255

13

Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Christensen's claim regarding his attorney's putative "stipulation" via e-mail that his client was guilty is frivolous. The statement was followed by an emoticon. Christensen's claims that his various attorneys should have investigated defenses of entrapment and alibi border on the frivolous. There is no reason to believe the agent who substituted for the "real girl" compelled or tricked Christensen into doing something he was not already more than willing to do. He could not have been somewhere else when he showed up with KY, condoms, and a video camera just as he promised the undercover agent he would. Even assuming that the difference between 97-121 months and 130-162 months was a "gross mischaracterization" of the likely advisory guideline range at sentencing, Christensen shows nothing beyond this error that would, to a reasonable probability, have persuaded him to take his case to trial rather than pleading guilty. *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986)

(quoting *Brady v. United States*, 397 U.S. 742, 748 & n.6 (1970)). The proposed plea offer was, as counsel described it, no deal at all, and Christensen was not prejudiced because the proposed agreement gave him no advantage that he lost by instead entering an open plea. Christensen identifies no medical information and no objections that were not considered at re-sentencing or that were omitted but could have made a difference in the sentence imposed. Nothing in counsel's performance at re-sentencing – which was necessary because counsel obtained a four-year reduction in the sentence on appeal – suggests counsel was functioning as anything less than the counsel guaranteed by the Sixth Amendment. Finally, *State v. Goetz*, 191 P.3d 489 (Mont. 2008), had no bearing on these federal cases.

There are no open questions. The law underlying denial of these claims is well-established. There is no need to appoint counsel or set an evidentiary hearing; the record has been adequately supplemented. A certificate of appealability is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Christensen's motions to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (docs. 115, 49) are DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall

immediately process the appeal if Christensen files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in these cases and in CV 12-105-BLG and CV 12-106-BLG are terminated and shall close the civil files by entering judgment in favor of the United States and against Christensen.

DATED this 11th day of April, 2013.

Richard F. Cebull
United States District Court